No. 24-2371

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LEON ABEL GONZALEZ,

*Petitioner-Appellant,*

*v.*

JUAN HERRERA AND COLLETTE PETERS,

*Respondents-Appellees.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA DISTRICT COURT NO. 23-CV-10554-DSF*

## GOVERNMENT'S ANSWERING BRIEF

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

KEDAR S. BHATIA
Assistant United States Attorney
1200 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-4442
Email: kedar.bhatia@usdoj.gov

Attorneys for Respondents-Appellees JUAN HERRERA AND COLLETTE PETERS

## TABLE OF CONTENTS

**DESCRIPTION**                                                                    **PAGE**

I.     INTRODUCTION ...............................................................................................1

II.    ISSUE PRESENTED ........................................................................................3

III.   STATEMENT OF THE CASE ........................................................................3

       A.    Jurisdiction, Timeliness, And Bail Status ..............................3

       B.    Statement of Facts And Procedural History..........................4

             1.    The First Step Act of 2018................................................4

             2.    Petitioner's sentence and confinement .........................6

             3.    Petitioner's habeas corpus petition ..............................7

IV.    SUMMARY OF ARGUMENT..........................................................................9

V.     ARGUMENT......................................................................................................11

       A.    Standard of Review ...................................................................11

       B.    The District Court Correctly Interpreted Section
             3632(d)(4)(C) and Its Order Should Be Affirmed .................12

             1.    The plain language, read in context, means that
                   time credits can expedite entry into prerelease
                   custody or supervised release but cannot shorten
                   a term of supervised release.........................................12

             2.    If any ambiguity remains, traditional tools of
                   statutory construction resolve it .................................16

                   a.    The overall statutory scheme of the First
                         Step Act supports the district court's
                         interpretation..................................................16

# TABLE OF CONTENTS (continued)

**DESCRIPTION**                                                    **PAGE**

       i.   The cross-reference to § 3624(g) ..................... 16

       ii.   The district court's interpretation avoids rendering any provision of the First Step Act inoperative or superfluous ..................... 18

    b.   Federal sentencing does not treat a term of imprisonment and a term of supervised release as interchangeable ................................. 21

    c.   The Bureau of Prisons' implementing regulations are consistent with the district court's reading ................................................... 24

    d.   Legislative history ............................................. 25

  3.   Petitioner's remaining arguments are meritless ......... 27

    a.   Dyer v. Fulgam is not persuasive ...................... 27

    b.   The First Step Act does not require that all earned time credits be used ............................... 31

  4.   The rule of lenity does not apply ................................. 33

VI.   CONCLUSION ....................................................................... 36

ii

# TABLE OF AUTHORITIES

**DESCRIPTION**                                              **PAGE(S)**

## Federal Cases

*Bifulco v. United States,*
   447 U.S. 381 (1980) ...................................................................33

*BNSF Ry. Co. v. Cal. Dep't of Tax & Fee Admin.,*
   904 F.3d 755 (9th Cir. 2018) ........................................................25

*Bottinelli v. Salazar,*
   929 F.3d 1196 (9th Cir. 2019) ......................................................29

*Clark v. Rameker,*
   573 U.S. 122 (2014) ............................................................... 18, 19

*Dep't of Homeland Sec. v. MacLean,*
   574 U.S. 383 (2015) ...................................................................14

*Dyer v. Fulgam,*
   2022 WL 1598249 (E.D. Tenn. 2022) ..................................... 27, 28, 30

*Ector v. Engleman,*
   2023 WL 6969784 (C.D. Cal. 2023) .................................................28

*Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson,*
   559 U.S. 280 (2010) ...................................................................14

*Guerriero v. Miami RRM,*
   2024 WL 2017730 (11th Cir. 2024) ........................................... passim

*Harrison v. Fed. Bureau of Prisons,*
   2022 WL 17093441 (S.D. Fla. 2022) ..................................................8

*King v. Burwell,*
   576 U.S. 473, (2015) ....................................................... 12, 14, 16, 17

*Lallave v. Martinez,*
   635 F. Supp. 3d 173 (E.D.N.Y. 2022) ...............................................30

iii

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                  **PAGE(S)**

*Loper Bright Enterprises v. Raimondo,*
144 S. Ct. 2244 (2024) ................................................................. 25, 30

*Maracich v. Spears,*
570 U.S. 48 (2013) ....................................................................... 34, 35

*Mont v. United States,*
587 U.S. 514 (2019) ............................................................................ 22

*Pulsifer v. United States,*
601 U.S. 124 (2024) ................................................................... passim

*Sash v. Zink,*
428 F.3d 132 (2d Cir. 2005) ............................................................. 34

*Sila v. Warden,*
2023 WL 2504476 (C.D. Cal. 2023) .................................................. 29

*Sinek v. United States,*
2024 WL 3873982 (N.D. Cal. 2024) .................................................. 28

*United States v. Calabrese,*
2023 WL 1969753 (N.D. Ohio 2023) ................................................. 8, 13

*United States v. Doost,*
2024 WL 2064062 (N.D. Cal. 2024) ............................................... 27, 29

*United States v. Harpine,*
976 F.2d 528 (9th Cir. 1992) ............................................................ 11

*United States v. Johnson,*
529 U.S. 53 (2000) ....................................................................... passim

*United States v. Lopez,*
998 F.3d 431 (9th Cir. 2021) ............................................................ 21

*United States v. Mejia-Pimental,*
477 F.3d 1100 (9th Cir. 2007) .......................................................... 11

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                      **PAGE(S)**

*United States v. Nader,*
  542 F.3d 713 (9th Cir. 2008)................................................................25

*United States v. Vallejo,*
  69 F.3d 992 (9th Cir. 1995)................................................................22

*Wright v. Federal Bureau of Prisons,*
  451 F.3d 1231 (10th Cir. 2006)..........................................................34

**Federal Statutes**

18 U.S.C. § 3582 ...................................................................................23

18 U.S.C. § 3583 ............................................................................20, 23

18 U.S.C. § 3586 ...................................................................................23

18 U.S.C. § 3621 ...................................................................................23

18 U.S.C. § 3624 ..............................................................................passim

18 U.S.C. § 3632 ..............................................................................passim

18 U.S.C. § 3586 ...................................................................................23

21 U.S.C. § 841 .................................................................................6, 23

21 U.S.C. § 846 ......................................................................................6

28 U.S.C. § 2241 .............................................................................2, 3, 7

28 U.S.C. § 2253 ....................................................................................3

**Federal Rules**

Fed. R. App. P. 4 ....................................................................................4

v

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                    **PAGE(S)**

## Federal Regulations

28 C.F.R. § 523.44......................................................................24

87 Fed. Reg. 2705.....................................................................24

## Other Authorities

164 Cong. Rec. S7642 ..............................................................25

164 Cong. Rec. S7746 ..............................................................25

164 Cong. Rec. S7752 ..............................................................26

164 Cong. Rec. H10361.............................................................26

No. 24-2371

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LEON ABEL GONZALEZ,

*Petitioner-Appellant,*

*v.*

JUAN HERRERA AND COLLETTE PETERS,

*Respondents-Appellees.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA DISTRICT COURT NO. 23-CV-10554-DSF*

## GOVERNMENT'S ANSWERING BRIEF

## I

## INTRODUCTION

The First Step Act directed the Bureau of Prisons to develop recidivism reduction programming and provided an incentive for prisoners to engage in these programs by awarding time credits that permit early transfer to prerelease custody or supervised release. As relevant to this appeal, the statute provides:

> **Application of time credits toward prerelease custody or supervised release.** Time credits earned . . . by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C).

Here, the Bureau of Prisons determined that petitioner was eligible for time credits, which it applied to release the defendant early from his term of imprisonment and transfer him to supervised release. In his habeas petition under 28 U.S.C. § 2241, Petitioner argued that he had unused time credits and asked the district court to apply them to reduce his five-year term of supervised release. The district court ruled that time credits can only be used for early transfer into prerelease custody or supervised release and cannot shorten a term of supervised release.

The district court's interpretation is mandated by the text of § 3632(d)(4)(C) and the overall statutory scheme of the First Step Act. Even if the text and context are ambiguous, the purpose of the First Step Act, the structure of federal sentencing, and the statute's legislative history all support the district court's reading of the statute.

2

The Eleventh Circuit (the only Court of Appeals that has addressed the issue) reached the same conclusion, as has nearly every district court that has considered § 3632(d)(4)(C).

This Court should follow the overwhelming weight of authority and affirm.

## II

## ISSUE PRESENTED

Did the district court correctly conclude that petitioner's First Step Act earned time credits do not apply to reduce his term of supervised release?

## III

## STATEMENT OF THE CASE

### A.    Jurisdiction, Timeliness, And Bail Status

The district court had jurisdiction under 28 U.S.C. § 2241. This Court has jurisdiction under 28 U.S.C. § 2253. The district court entered its order dismissing the petition on April 2, 2024. (CV-11).[1]

---

[1] "CV" refers to the district court Clerk's Record of defendant's habeas case; "CR" refers to the district court's Clerk's Record in petitioner's underlying criminal case, *United States v. Gonzalez et al.*, No. 14-cr-684-CAS (C.D. Cal.); and "AOB" refers to Appellant's Opening Brief.

Petitioner filed a timely notice of appeal on April 12, 2024. (ER-177). *See* Fed. R. App. P. 4(a)(1)(B). Petitioner is serving the term of supervised release imposed as part of his sentence in his underlying criminal case.

## B. Statement of Facts And Procedural History

### 1. The First Step Act of 2018

In general, the Bureau of Prisons is authorized to permit an inmate serving a term of custody to spend "a portion of the final months of that term (not to exceed 12 months)" in prerelease custody. 18 U.S.C. § 3624(c)(1). "Prerelease custody" is home confinement or placement at a residential reentry center. 18 U.S.C. § 3624(g)(2). When the prisoner's term of imprisonment expires, "[a] prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court." 18 U.S.C. § 3624(e).

The First Step Act, Pub. L. No. 115-391, 132 Stat. 5195, created an incentive program whereby prisoners can increase their time in

prerelease custody as well as obtain early transfer to supervised release. The First Step Act requires the Attorney General to develop a "risk and needs assessment system" to determine a prisoner's recidivism risk, and to provide evidence-based recidivism reduction programs and productive activities to prisoners. *See* 18 U.S.C. § 3632(a). Eligible prisoners can earn time credits by successfully participating in these programs. 18 U.S.C. § 3632(d)(4)(A).

When an eligible prisoner has earned time credits equal to the time remaining on their sentence and has demonstrated a consistently minimum or low risk of recidivism, these time credits can be used to accelerate an inmate's entry into prerelease custody or supervised release. *See* 18 U.S.C. §§ 3624(a), (e), (g)(1)(A-B), (g)(3), 3632(d)(4).

Specifically, "the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632." 18 U.S.C. § 3624(g)(3). The First Step Act also waived the 12-month limit on the length of time an inmate with First Step Act time credits can spend in prerelease custody. *See* 18 U.S.C. § 3624(g)(10) (waiving limits in § 3624(b) & (c) on the amount of time an

5

inmate who has earned time credits can spend in prerelease custody).

Thus, time credits can be applied toward early transfer to prerelease

custody, not only allowing inmates to shorten their term in the most

restrictive form of custody and spend more time in less-restrictive

prerelease custody, but also allowing inmates to spend more time in

prerelease custody than the general 12-month limit permits. *See* 18

U.S.C. §§ 3624(g)(1)-(3), 3632(d)(4)(C).

In sum, in the ordinary course, time credits can be used to reduce

a term of incarceration up to 12 months by bringing forward the time

when an inmate may be transferred to supervised release, 18 U.S.C.

§ 3624(g)(3), and time credits in excess of 12 months can be used to

obtain an early transfer into prerelease custody as soon as the prisoner

has earned time credits equal to the remaining time on their term of

imprisonment.

### 2. *Petitioner's sentence and confinement*

In 2016, petitioner pleaded guilty to conspiracy to distribute and

possess with the intent to distribute methamphetamine, in violation of

21 U.S.C. §§ 846 and 841(b)(1)(A), and the district court sentenced him

to 120 months' imprisonment to be followed by 5 years' supervised release.  (CR-793, 800, 941; ER-3.)

On November 19, 2020, the Bureau of Prisons placed petitioner in prerelease custody (home confinement) pursuant to the CARES Act. (ER-108.)

### 3.    Petitioner's habeas corpus petition

In December 2023, while on home confinement, petitioner filed a habeas corpus petition pursuant to 28 U.S.C. § 2241.  (ER-120.)  In the petition, he claimed that the Bureau of Prisons had not considered his time credits and that he was entitled to at least 560 days of time credits.  (ER-127, 139.)  Applying those time credits, he argued that his release date should have been September 26, 2023 (not September 26, 2024 as calculated by the Bureau of Prisons); he further argued that since he had overserved his sentence, he was entitled to credit for that overservice to reduce his term of supervised release.  (ER-127.)

On February 1, 2024, before the government's answering brief was due, the Bureau of Prisons determined that petitioner had accrued 610 time credits.  (ER-108.)  The next day, petitioner was released from

7

custody following the application of 237 days of time credits toward early placement on supervised release.  (ER-107.)

In its opposition, the government argued that the petition should be denied or dismissed as moot because the text of § 3632(d)(4)(C), in context, made clear that any excess time credits could not be applied to reduce petitioner's then-commenced term of supervised release.  (ER-87–105.)

The district court concluded that excess time credits did not reduce petitioner's term of supervised release and dismissed the petition.  (ER-3–7).  In analyzing the text of § 3632(d)(4)(C), the court concluded that "toward" meant "in the direction of" or "on a course . . . leading to . . . something," and thus time credits bring something— namely, an individual's "time in prelease custody or supervised release"—closer to occurring.  (ER-5–6.)  The court cited two district court decisions that reached the same conclusion, finding these decisions "to be the most persuasive because these courts provided detailed explanations of their statutory analysis."  (ER-6 (citing *United States v. Calabrese*, 2023 WL 1969753 (N.D. Ohio 2023), and *Harrison v. Fed. Bureau of Prisons*, 2022 WL 17093441 (S.D. Fla. 2022)).

8

IV

## SUMMARY OF ARGUMENT

The issue in this appeal is how to interpret one provision of the First Step Act, 18 U.S.C. § 3632(d)(4)(C). The first sentence of that provision states that time credits "shall be applied toward time in prerelease custody or supervised release," and the second sentence provides that the Bureau of Prisons "shall transfer eligible prisoners . . . into prerelease custody or supervised release." All of the relevant interpretive tools compel the same result: time credits may be used to expedite an inmate's entry into prerelease custody and supervised release, but those credits may not be used to shorten the term of supervised release. The district court and the overwhelming majority of courts that have addressed the issue, including the only Court of Appeals to address the issue, agree on this meaning of the First Step Act.

This conclusion is drawn from the text of § 3632(d)(4)(C), which should be read in the context of the entire statute. Several of the relevant provisions implementing time credits contemplate those credits being used to expedite entry into a term of supervised release or

prerelease custody, with credits over 12 months going to enlarge the period of prerelease custody and shorten the period of prison incarceration. Nowhere in the First Step Act does the statute contemplate time credits *shortening* prerelease custody or supervised release, which would be contrary to the important purposes of the statute.

Section 3632(d)(4)(C) must also be read in the context of the overall sentencing framework. Courts have repeatedly recognized that terms of imprisonment and terms of supervised release serve different purposes. Supervised release terms play an important part in reintegrating a defendant into the community, and it would be quite contrary to the purposes of sentencing for the First Step Act to be interpreted to shorten or even eliminate that period of supervision altogether for some inmates. Important practical obstacles also underlie treating terms of imprisonment and supervised release separately.

The legislative history of the First Step Act, namely statements by multiple lawmakers during the passage of the legislation, also shows that Congress intended for time credits to allow for earlier entry into

prerelease custody and supervised release, not to shorten or even eliminate either status.

In arguing to the contrary and against nearly every decision on this issue, petitioner focuses on the first sentence of § 3632(d)(4)(C) in isolation. Petitioner's interpretation is contrary to the plain text of § 3632(d)(4)(C), including the second sentence of that provision, and is not in harmony with the statute as a whole. It is no surprise that petitioner relies on only one outlier district court ruling in his favor. That decision is unpersuasive, and nearly every other court has rejected it.

The district court properly analyzed the First Step Act and its ruling should be affirmed.

## V

## ARGUMENT

### A. Standard of Review

This Court reviews "de novo a district court's interpretation of a statute." *United States v. Harpine*, 976 F.2d 528, 528 (9th Cir. 1992); *accord United States v. Mejia-Pimental*, 477 F.3d 1100, 1103 (9th Cir. 2007).

11

**B.** **The District Court Correctly Interpreted Section 3632(d)(4)(C) and Its Order Should Be Affirmed**

> **1.** ***The plain language, read in context, means that time credits can expedite entry into prerelease custody or supervised release but cannot shorten a term of supervised release***

The issue in this appeal is the correct reading of § 3632(d)(4)(C). "If the statutory language is plain, [this Court] must enforce it according to its terms." *King v. Burwell*, 576 U.S. 473, 486, (2015). "But oftentimes the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *Id.* (cleaned up). "So when deciding whether the language is plain, [this Court] must read the words in their context and with a view to their place in the overall statutory scheme." *Id.* (cleaned up).

The first sentence of § 3632(d)(4)(C) states that earned-time credits are to be "applied *toward* time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphasis added). *Black's Law Dictionary* defines "toward" as "1. In the direction of; on a course or line leading to (some place or something)" and "2. Coming soon; not long before." *Black's Law Dictionary* (12th ed. 2024); *see also* Toward, *Black's Law Dictionary* (11th ed. 2019) (same). Applying this

12

definition, the Eleventh Circuit reasoned that time credits cannot reduce a period of supervised release; rather, "use of the word 'toward' means that credits can be applied to bring time in prerelease custody or supervised release closer to occurring because credits applied 'toward' something generally means to bring that something closer to happening." *Guerriero v. Miami RRM*, 2024 WL 2017730, at *2 (11th Cir. 2024) (cleaned up and quoting *United States v. Calabrese*, 2023 WL 1969753, at *2 (N.D. Ohio 2023)) (unpublished).

Focusing on the first sentence in isolation, petitioner cites other dictionary definitions of "toward," as well as "apply," that he claims suggest that time credits are to be used as a credit in partial fulfillment of prerelease custody or supervised release. (AOB 15–16.)[2]  But § 3632(d)(4)(C) uses the word "applied" toward, not "credited" toward. That word choice is significant because a different subsection of the

---

[2] Petitioner also omits certain definitions in the same sources he cites that do *not* support his preferred reading.  For example, Merriam-Webster gives the definition petitioner quotes but, like Black's Law Dictionary, it also defines "toward" as "in the direction of" and "along a course leading to." Toward, Merriam-Webster, https://www.merriamwebster.com/dictionary/toward (last visited Sept. 18, 2024).

13

First Step Act does use the word "credited" in amending the separate Good Time Credit Program. *See* First Step Act, § 102(a), 132 Stat. 5210 (amending 18 U.S.C. § 3624(b)). "Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another." *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015).

More importantly, this Court's job is to "to construe statutes, not isolated provisions." *King*, 576 U.S. at 486 (quoting *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson,* 559 U.S. 280, 290 (2010) (internal quotation marks omitted)). Reviewing the "text in context," *Pulsifer v. United States*, 601 U.S. 124, 133 (2024), requires examining how both sentences of the provision "relate to each other" and "how they fit with other pertinent law," *id.* at 141.

The second sentence of § 3632(d)(4)(C) states that the Bureau of Prisons "shall transfer eligible prisoners . . . *into* prerelease custody or supervised release." *Id.* (emphasis added). Transferring prisoners *into* supervised release is exactly what the first sentence contemplates— reducing a term of imprisonment to begin supervised release earlier. Moreover, the word "transfer" has meaning only if time credits affect

14

the timing of that transfer, *i.e.*, by bringing the defendant closer to his "time in" supervised release. Under petitioner's reading, time credits could potentially eliminate supervised release altogether, so there would be no "transfer . . . into" supervised release, rendering the second sentence superfluous. On the other hand, interpreting the first sentence of § 3632(d)(4)(C) to advance prerelease custody or supervised release—rather than reducing the time spent in each status and potentially eliminating them altogether—means that the second sentence of § 3632(d)(4)(C) implements the first sentence.

Contrary to petitioner's contention (AOB 18), the district court's reading does not render "time in" superfluous; rather, it is that phrase that defeats petitioner's interpretation. Application of time credits brings an inmate closer to commencing his "time in" prerelease custody or supervised release. Eliminating the text "time in"—such that time credits are applied "toward . . . supervised release"—would make petitioner's construction plausible.

In sum, reading both sentences of § 3632(d)(4)(C) together "clearly indicates that Congress meant that the time credits are to be used to reduce incarceration time so as to accelerate the beginning of prerelease

15

custody or supervised release." *Guerriero*, 2024 WL 2017730, at *2.[3]

### 2. If any ambiguity remains, traditional tools of statutory construction resolve it

#### a. The overall statutory scheme of the First Step Act supports the district court's interpretation

Examining § 3632(d)(4)(C)'s "place in the overall statutory scheme," *King*, 576 U.S. at 486, further confirms the correctness of the district court's interpretation.

##### i. The cross-reference to § 3624(g)

To implement the early transfer provisions, § 3632(d)(4)(C) cross-references § 3624(g). As noted above, § 3624(g) provides that transfer to supervised release based on the application of time credits cannot occur more than 12 months prior to expiration of the prisoner's sentence. 18 U.S.C. § 3624(g)(3). This provision caps the effect that time credits may have on supervised release at 12 months. Thus, the cross-reference further confirms that time credits can shorten a term of imprisonment

---

[3] Defendant suggests that the district court's interpretation is inconsistent because it permits time credits to reduce the length of prerelease custody but not supervised release. (AOB 17–18.) There is no inconsistency. The district court (and the government) read § 3632(d)(4)(C) as permitting time credits to permit early entry into *both* prerelease custody and supervised release.

16

by hastening the commencement of a term of supervised release, but they cannot shorten the term of supervised release itself. *Guerriero*, 2024 WL 2017730, at *2-*3.

Elsewhere, § 3624(g) sets eligibility for early release when a prisoner's earned time credits equal "the remainder of the prisoner's imposed term of imprisonment." *See* 18 U.S.C. § 3624(g)(1)(A). This section also states that time credits may be used for the Bureau of Prisons to "*transfer* the prisoner *to begin* any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632." 18 U.S.C. 3624(g)(3) (emphasis added). The cross-referenced provision thus contemplates only a "transfer" to "begin" supervised release and nothing more. *Id.*

Section 3624(g), effectively the implementing provision for time credits, plainly contemplates a transfer into prerelease custody or supervised release, not shortening those periods. Section 3632(d)(4)(C) should be read in harmony with this cross-referenced provision. *Pulsifer*, 601 U.S. at 133; *King*, 576 U.S. at 486.

17

ii.     The district court's interpretation avoids
        rendering any provision of the First Step Act
        inoperative or superfluous

"A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous." *Clark v. Rameker*, 573 U.S. 122, 131 (2014) (internal quotation marks omitted); *see also Pulsifer*, 601 U.S. at 143 (discussing the canon against surplusage). The district court's interpretation reads all provisions of the statute in harmony, while petitioner's reading would render several portions of the First Step Act meaningless.

First, the cross-referenced provision sets forth eligibility criteria for placement into prerelease custody or supervised release, including that the prisoner has been determined under the risk and needs assessment system to be a minimum to low risk to recidivate. 18 U.S.C. § 3624(g)(1)(D). Petitioner's reading—requiring all credits to be used and permitting unused credits to be used to shorten a term of supervised release—would circumvent those eligibility limitations, and allow time credits to be used to reduce the total time on supervision for an inmate who was deemed too risky to obtain early transfer out of prison. *See Pulsifer*, 601 U.S. at 147–48 (rejecting reading of the safety-

18

valve provision in 18 U.S.C. § 3553(f)(1) that "fails to divide . . . more from less serious prior offenders," contrary to text as a whole).

Second, § 3624(g)(10) waives the general 12-month limit on the length of time an inmate can spend in prerelease custody. The enlargement of prerelease custody time would be rendered irrelevant if § 3632(d)(4)(C) is interpreted as *reducing* the time a defendant spends in prerelease custody or the imposed term of supervised release. "When a statutory construction . . . renders an entire subparagraph meaningless" the Supreme Court has noted, "the canon against surplusage applies with special force." *Pulsifer*, 601 U.S. at 143 (internal alterations omitted); *see also Clark*, 573 U.S. at 131.

The canon against surplusage thus compels only one result: § 3632(d)(4)(C) must be read simply to mean that time credits can advance the start date of prerelease custody or supervised release and extend the term of prerelease custody beyond 12 months.

Third, reading § 3632(d)(4)(C) as permitting time credits to reduce a prisoner's length of time in supervised release is illogical because the First Step Act contains no procedure to implement such a result. It does not, for example, direct the Bureau of Prisons to calculate a

19

reduced term of supervised release or authorize the Probation Office to discharge a defendant early from supervised release once time credits are applied. Nor does the First Step Act amend 18 U.S.C. § 3583(e), which governs modification of supervised release. On the contrary, at the conclusion of a prisoner's term of incarceration, he "shall be released by the Bureau of Prisons to the supervision of a probation officer who shall, *during the term imposed*, supervise the person released to the degree warranted by the conditions specified by the sentencing court." 18 U.S.C. § 3624(e) (emphasis added). This provision contemplates that the inmate, upon release, will serve the full term of supervised release imposed by the district court, without any reduction for First Step Act time credits.

Finally, by the express terms of § 3632, the purpose of awarding time credits is to "provide incentives and rewards for prisoners to participate in and complete evidence-based recidivism reduction programs." 18 U.S.C. § 3632(d). "[T]he obvious incentive was that the time credits would reduce a prisoner's incarceration time—not that the credits would reduce the post-incarceration supervised release." *Guerriero*, 2024 WL 2017730, at *3. Petitioner's construction of

20

§ 3632(d)(4)(C) thus "makes a hash of the scheme Congress devised."

*Pulsifer*, 601 U.S. at 149.[4]

### b. Federal sentencing does not treat a term of imprisonment and a term of supervised release as interchangeable

Although supervised release is part of a defendant's sentence, federal sentencing statutes do not treat terms of imprisonment and terms of supervised release as interchangeable.

Supervised release "fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Thus, in *Johnson*, the Supreme Court held that excess time served in prison after certain counts of conviction are invalidated does not shorten a term of supervised release. *Id.* at 59-60. In reaching that conclusion, the Court noted that treating terms of imprisonment and supervision separately "accords with [§ 3624(e)'s] purpose and design," as "[t]he objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release." *Id.*

---

[4] Oddly, in arguing against the district court's reading, petitioner repeatedly relies on *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021), which *Pulsifer* overruled. (*See* AOB 13, 19, 21, 28.)

at 59; *see also Mont v. United States*, 587 U.S. 514, 523 (2019) (quoting *Johnson* and adopting the government's position that a term of pretrial detention from one case does not shorten a term of supervised release from a prior case).

The same reasoning applies here. The First Step Act provides incentives for prisoners to complete recidivism reduction programs by providing a mechanism to reduce their term of imprisonment and increase the portion of imprisonment served in prerelease custody. But supervised release serves "to facilitate the reintegration of the defendant into the community," *United States v. Vallejo*, 69 F.3d 992, 994 (9th Cir. 1995) (internal quotation marks omitted). That objective would be unfulfilled if unused time credits were used to reduce a term of supervised release. Indeed, if petitioner's interpretation were adopted, defendants who served the lengthiest terms of imprisonment, thereby potentially accruing the most time credits, would be most likely to have their terms of supervised release eliminated altogether, leaving them without the reintegrative benefits of supervised release. Application of time credits to reduce petitioner's term of supervised release is particularly inappropriate here because petitioner was

22

sentenced to a mandatory minimum term of supervised release pursuant to 21 U.S.C. § 841(b)(1)(a) (CR-793, 913, 941), indicating that Congress determined that a supervised release term of at least that length was necessary to promote rehabilitation and deter recidivism.

Other parts of the sentencing framework likewise treat terms of imprisonment and supervised release separately. For example, Congress has enacted separate statutes governing reductions in the term of imprisonment and reductions in the term of supervised release. *Compare* 18 U.S.C. § 3582(c) (modifying terms of imprisonment), *with* 18 U.S.C. § 3583(e)(1) (modifying terms of supervised release).

Furthermore, the practical effects of petitioner's proposed reading support rejecting it. Implementation of a sentence of imprisonment is the responsibility of the Bureau of Prisons, 18 U.S.C. §§ 3586, 3621(a), 3624(a), while implementation of a term of supervised release "during the term imposed" is the responsibility of a probation officer. 18 U.S.C. §§ 3586, 3601. Thus, once a prisoner is released from custody, the Bureau of Prisons' role ends. 18 U.S.C. § 3621(a). The only action that the First Step Act authorizes the director of the Bureau of Prisons to take with respect to an imposed term of supervised release is to transfer

23

the prisoner to begin such term of supervised release. *See* 18 U.S.C. §§ 3624(g)(3), 3632(d)(4)(C). Interpreting § 3632(d)(4)(C) to require the Bureau of Prisons to apply time credits to calculate the termination of supervised release would be unworkable and run afoul of each agency's separate domain.

### c. *The Bureau of Prisons' implementing regulations are consistent with the district court's reading*

The Bureau of Prisons' implementing regulations, which were adopted after notice-and-comment rulemaking, *see* FSA Time Credits, 87 Fed. Reg. 2705, 2706 (Jan. 19, 2022), address "[h]ow time credits may be applied." 28 C.F.R. § 523.44(a). Those regulations provide that time credits may be applied "toward *early* transfer to supervised release" when eligibility requirements are met, 28 C.F.R. § 523.44(d) (emphasis added), confirming the view that time credits accelerate the beginning of supervised release rather than shortening the term itself.

Although courts may no longer defer to an agency interpretation of the law simply because a statute is ambiguous, the Bureau of Prisons has experience and expertise in calculating various types of credits available to prisoners and this Court may (and should) consider the agency's "body of experience and informed judgment" in carrying out

24

the court's role to interpret the statute. *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2267 (2024).

### d.    Legislative history

Where statutory terms are ambiguous, courts may consider legislative history to clarify their meaning. *See BNSF Ry. Co. v. Cal. Dep't of Tax & Fee Admin.*, 904 F.3d 755, 764 (9th Cir. 2018) ("Where the plain language of a provision is open to more than one interpretation, we may look to legislative history to clarify its meaning"); *United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008) ("If the terms are ambiguous, we may look to other sources to determine congressional intent, such as the canons of construction or the statute's legislative history.").

In remarks in support of the First Step Act, Sen. John Cornyn stated that "[i]t is important that we look at people who are at low risk of recidivism and low risk to public safety in the community because what we can do is use the resources not to keep people like that behind bars unnecessarily." 164 Cong. Rec. S7642 (Dec. 17, 2018). In a statement the next day, Sen. Cornyn elaborated, saying that the "incentives" in the First Step Act "are really important" because

25

prisoners would "go through the program, gain the earned credit so that they can be released . . . in less confining conditions, for example, a halfway house." 164 Cong. Rec. S7746 (Dec. 18, 2018).

In other remarks, Representative Jerry Nadler spoke in support of the First Step Act's "establish[ment of] an independent review committee of outside experts to assist the Justice Department in the development of the risk and needs assessment system that would determine the programming for inmates, their risk categories, and their eligibility for *early entry into prerelease custody*." 164 Cong. Rec. H10361 (Dec. 20, 2018) (emphasis added); *see also* 164 Cong. Rec. S7752 (Dec. 18, 2018) (statement of Sen. Robert Menendez) ("Under this legislation, low-risk offenders will be able to earn credit by completing anti-recidivism programs that help better prepare them for life after prison. Inmates can then apply these credits for *early placement* in a halfway house, home confinement, or other types of early release.") (emphasis added).

In sum, legislative history for the First Step Act "supports a narrow application of earned time credits to reduce a convicted felon's period of incarceration and to release them to pre-release custody or to

26

supervised release, but not to reduce their supervised release term."
*United States v. Doost*, 2024 WL 2064062, at \*5 (N.D. Cal. 2024)
(reviewing the statute's legislative history).

* * *

As the Supreme Court recently reaffirmed, the choice between two
interpretations of a statute "can sensibly be made only by examining . . .
text in context." *Pulsifer*, 601 U.S. at 133.  Here, in the context of the
entirety of § 3632(d)(4)(C), the First Step Act, and the federal
sentencing framework as a whole, § 3632(d)(4)(C) can only be read to
mean that time credits permit an inmate's entry into prerelease custody
or supervised release, but may not shorten the term of supervised
release.

### 3.    *Petitioner's remaining arguments are meritless*

#### a.    *<u>Dyer v. Fulgam</u> is not persuasive*

In support of his argument for applying time credits against his
term of supervised release, petitioner principally cites the district court
case of *Dyer v. Fulgam*, 2022 WL 1598249 (E.D. Tenn. 2022), *appeal*

27

*filed and then dismissed as moot*, No. 22-5608 (6th Cir. 2023),[5] an outlier that held that excess time credits should be applied to reduce a term of supervised release.

*Dyer* has been rejected by nearly every court to address the issue, including the only other Court of Appeals to rule on this issue. In *Guerriero*, the Eleventh Circuit rejected the arguments that petitioner now makes, noting that every case to address the question has reached the same conclusion except *Dyer*. 2024 WL 2017730, at *3 (collecting cases). District courts in this Circuit have also uniformly rejected *Dyer*. *See, e.g.*, *Sinek v. United States*, 2024 WL 3873982, at *4 (N.D. Cal. 2024) ("A review of the cases following *Dyer* . . . reflects that the contrary conclusion reached in that case has been rejected by nearly all of the courts that have considered whether time credits should be applied to reduce a term of supervised release."); *Ector v. Engleman*, 2023 WL 6969784 (C.D. Cal. 2023), *report and recommendation*

---

[5] The government appealed the district court's ruling in *Dyer*; however, the appeal was dismissed after Dyer was granted early termination of supervised release, which mooted the appeal. *See* Joint Motion to Dismiss Appeal as Moot at 1-2, *Dyer v. Fulgam*, No. 22-5608 (6th Cir. 2023) (ECF No. 35); Order at 1, *Dyer v. Fulgam*, No. 22-5608 (6th Cir. 2023) (ECF No. 36).

28

*adopted*, 2023 WL 6130511, at \*5 (C.D. Cal. 2023) ("[T]he majority of courts that have addressed the issue [of applying time credits against the term of supervised release] since *Dyer* have reached the opposite conclusion" from that case.) (collecting cases); *Sila v. Warden*, 2023 WL 2504476, at \*2 (C.D. Cal. 2023) ( "The First Step Act requires the Bureau of Prisons to transfer inmates to prerelease custody or supervised release when such inmates become eligible based on earned time credits under the Act . . . , but it does not provide for a reduction of supervised release terms, and the Bureau of Prisons is not authorized to reduce such terms."), *report and recommendation adopted*, 2023 WL 2504989 (C.D. Cal. 2023); *see also Doost*, 2024 WL 2064062, at \*8.

In a footnote, petitioner cites several cases that he argues align with *Dyer* and petitioner's reading of the First Step Act. Most of these cases contain no discussion of the correct interpretation of § 3632(d)(4)(C); petitioner merely pulls dicta from cases that address other issues or were dismissed for failure to exhaust administrative remedies. (AOB 32 n.8.) *See also Bottinelli v. Salazar*, 929 F.3d 1196, 1200 (9th Cir. 2019) (stating in dictum that under the First Step Act "earned time credit can potentially shorten prerelease custody or

29

supervised release"). These cases shed no light on the proper interpretation of the relevant provisions. *See Loper Bright Enterprises*, 144 S. Ct. at 2277 (Gorsuch, J., concurring) (stating with reference to dicta that courts must be careful "not to treat every hasty expression as a serious and deliberate opinion") (cleaned up). One case defendant cites, *Lallave v. Martinez*, 635 F. Supp. 3d 173 (E.D.N.Y. 2022), found that the defendant was eligible for time credits and directed the BOP "to award Petitioner the FSA credits that she is entitled to, which should result in her immediate release to supervised release, and to apply the remaining credits to reduce her time on supervised release." *Id.* at 190. However, the disputed issue in that case was whether the defendant was eligible for time credits at all; the district court added the final instruction about applying time credits to a term of supervised release without any meaningful discussion of § 3632(d)(4)(C). A district court's aside at the end of a lengthy opinion discussing other statutory matters should be given no persuasive weight.

For all the reasons discussed in sections V.B.1 and V.B.2 *supra*, *Dyer* is poorly reasoned and lacks any persuasive weight. This Court should reject the reasoning of *Dyer* and instead join the overwhelming

majority of courts in giving § 3632(d)(4)(C) its plain meaning, which is that time credits may hasten an inmate's entry into prerelease custody or supervised release but may not shorten the term of supervised release.

### b. The First Step Act does not require that all earned time credits be used

Petitioner's argument rests on the flawed premise that all credits earned must be put to use. (AOB 15, 29-30.) The First Step Act contains no such requirement.

Nothing in the First Step Act requires that all earned time credits be used. On the contrary, the Act contains multiple restrictions limiting the eligibility of prisoners who have earned time credits to obtain early transfer into prerelease custody or supervised release. *E.g.*, 18 U.S.C. § 3624(g)(1)(A)–(D), (5). Nor does Congress's decision to limit the use of time credits to early release into prerelease custody and supervised release undermine the incentive system created by the First Step Act. A prisoner becomes eligible for transfer to prelease custody or supervised release once the inmate has earned time credits "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A). If that period is twelve

31

months or less, the prisoner can reduce his term of incarceration by obtaining a transfer to supervised release. *See* 18 U.S.C. § 3624(g)(3). If that period is greater than twelve months, the prisoner can obtain an additional benefit of early transfer to prerelease custody, potentially for far longer than the twelve months that would otherwise be authorized by statute. *See* 18 U.S.C. § 3624(g)(10). Thus, an inmate has every incentive to earn as many time credits as possible without the need to interpret those credits to shorten the imposed term of supervised release.

The government acknowledges that in this case, petitioner might have obtained a somewhat earlier transfer into supervised release had the Bureau of Prisons calculated his time credits at an earlier point. "There can be no doubt that equitable considerations of great weight exist when an individual is incarcerated beyond the proper expiration of his prison term." *Johnson*, 529 U.S. at 60. But that is not a license to interpret § 3632(d)(4)(C) in a manner that the provision's language cannot sustain. Instead, "[t]he statutory structure provides a means to address these concerns in large part":

> The trial court, as it sees fit, may modify an individual's conditions of supervised release. [18 U.S.C.] § 3583(e)(2).

32

Furthermore, the court may terminate an individual's supervised release obligations "at any time after the expiration of one year . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." § 3583(e)(1). [Petitioner] may invoke § 3583(e)(2) in pursuit of relief; and, [after] complet[ing] one year of supervised release, he may also seek relief under § 3583(e)(1).

*Id.*[6]

### 4.     *The rule of lenity does not apply*

Finally, defendant claims that if any ambiguity remains, that ambiguity must be resolved in his favor under the rule of lenity. (AOB 35.) However, the rule of lenity does not aid petitioner in this case.

First, as a threshold matter, the rule of lenity does not apply to the statutes governing time credits. Although the rule of lenity "applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose," *Bifulco v. United*

---

[6] Petitioner has functionally received much of the benefit he could have received from First Step Act time credits. In November 2020, defendant was released from prison confinement into home confinement pursuant to the CARES Act. (ER-108.) This was nearly four years earlier than his projected release date from custody, which was in September 2024. So, he indirectly received much of what the First Step Act contemplates, which is early release into supervised release—albeit only seven months early instead of the 12 months that the First Step Act permits—and excess credit being applied to lengthen a period of prerelease custody and shorten the period of prison custody.

*States*, 447 U.S. 381, 387 (1980), the calculation of time credits is not an interpretation of any criminal prohibition or the penalty for any criminal prohibition. *See Wright v. Federal Bureau of Prisons*, 451 F.3d 1231, 1236 (10th Cir. 2006) (holding that the rule of lenity did not apply to the calculation of good time credits, as "Section 3624(b) is neither a substantive criminal statute nor does it prescribe the punishment imposed for a violation of such a statute"); *Sash v. Zink*, 428 F.3d 132, 134 (2d Cir. 2005) (Sotomayor, J.) (holding that "[b]ecause § 3624(b) is not a criminal statute, the rule of lenity is not relevant to this case"). For this reason, even if there was ambiguity remaining, the rule of lenity has no application in this case.

Second, after considering the context of the First Step Act and other canons of construction, there is only one permissible interpretation of § 3632(d)(4)(C), leaving no genuine ambiguity and no room for the rule of lenity. "[T]he rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended." *Maracich v. Spears*, 570 U.S. 48, 76 (2013) (internal quotation marks omitted); *see, e.g.*,

34

*Johnson*, 529 U.S. at 59. For example, in *Pulsifer*, the Supreme Court held that the rule of lenity had no import because there was no genuine ambiguity in the provision at issue after considering the context of the statute and canons of construction. *Id.* The same is true in this case. This Court need not "simply guess as to what Congress intended." *Maracich*, 570 U.S. at 76 (internal quotation marks omitted). Even if the plain text of § 3632(d)(4)(C) is ambiguous, the remaining interpretative tools all point to reading the rule in harmony with the rest of the First Step Act, "leaving no role for lenity to play." *Id.* at 153.

35

# VI

# CONCLUSION

The district court's order dismissing petitioner's § 2241 petition should be affirmed.

DATED: September 27, 2024                    Respectfully submitted,

                                             E. MARTIN ESTRADA
                                             United States Attorney

                                             MACK E. JENKINS
                                             Assistant United States Attorney
                                             Chief, Criminal Division

                                             _/s/ Kedar S. Bhatia_
                                             KEDAR S. BHATIA
                                             Assistant United States Attorney
                                             General Crimes Section

                                             Attorneys for Respondents-
                                             Appellees JUAN HERRERA AND
                                             COLLETTE PETERS

## STATEMENT OF RELATED CASES

The government states, pursuant to Ninth Circuit Rule 28-2.6, that it is unaware of any cases related to this appeal.

# CERTIFICATE OF COMPLIANCE

I certify that:

1.     This brief complies with the length limits permitted by Ninth Circuit Rule 32-1 because the brief contains 6,618 words, excluding the portions exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 365.

DATED: September 27, 2024

*/s/ Kedar S. Bhatia*
KEDAR S. BHATIA
Attorneys for Respondents-
Appellees JUAN HERRERA AND
COLLETTE PETERS